Our first case up this morning is 419-0470 in re. Marriage of Demosthenes. Is that the last card? Okay. As you see, counsel, there are only two of us here this morning because Justice James Connect is the third member of this panel who is not able to make it. So we will continue and we'll proceed as we would normally with the two of us and Justice Connect will listen to your oral arguments and be a participant in the decision of this case. It's always regrettable. Justice says he's regret that he's not able to be here, but I've been in that position myself where you can listen to the tape and it's pretty good just so you understand that the three of us will be deciding. So without anything further for the appellant, Ms. Barbara Weber, he or she, and for the appellee, Angela Skinner. Okay, Ms. Weber. May it please the court and counsel, in briefing this case, I was taken back to law school and some of the lessons that you learned that first year. Read the statute, the whole statute. Remember your rules of statutory construction. And at trial, it's the evidence. Both parties have an obligation to present the evidence and the court has to take the case as he finds it. In this case, one of, I think, the primary problem that the trial court had was the newness of the income shares statute for assignment of child support and applying it to the somewhat new, the evidence of the parties and reducing his decision to writing. There seemed to be a little bit of confusion about what actually was supposed to be included as income for considering child support. In this particular case, I think the trial court abused its discretion clearly by not including all of Ms. Demosthenes' income. The court specifically disregarded interest income that she had, dividend income that she had, as well as a withdrawal from an investment account that she had. All of those clearly income under Rogers and his calculation. In addition, the trial court disregarded the income or lack thereof that Mr. Demosthenes had from a rental property business that he had been running even while the parties were married. In that case, he had income coming in and, over time, a resulting loss. The court disregarded this despite the fact that business income is supposed to be considered under Section 505. In not considering that information, the court's determination of child support was an abuse of discretion. However, it gets a little bit the amount of support the court ordered to be paid. The trial court relied exclusively on the petitioner's, on Ms. Demosthenes' counsel's calculations. Looking at those calculations, the income that she attributed to Mr. Demosthenes far exceeded the income that the trial court stated it was going to rely on in setting child support. Now, the trial court decided to impute Ms. income to Mr. Demosthenes, despite the fact that he lost his job. And I'll discuss that later. But, taken as it is, the trial court's ruling said, we're going to consider his income as his base salary at Bard Medical, which was $71,400. That's what was stated in the party's agreement as the base income. That's what was stated on petitioner's, Ms. Demosthenes' own exhibits from Bard, which stated his base income. That's what was stated by the trial court in its order. You have to do the math on that, because the income from $71,400 over 12 months is not the $11,000 that petitioner's counsel used in her exhibit. What about the trial court's finding that the respondent's testimony relating to losing his job was not particularly believable? How should that affect this court's assessment of the court's ruling? Well, I think that's a very interesting question, one that I kind of struggled with myself. But I think you have to look at all of the evidence presented, which includes the Bard documents. And so from those documents, and from the numbers presented in them, you get an objective picture of what was going on here. Regardless of whether you believe Mr. Demosthenes' testimony about his job, if you look at the exhibit, I believe Well, let me be more clear in my question. What I'm addressing is this. There are fewer things to which we as an appellate court are more deferential than findings by the trial court that a witness wasn't believable, or turns out this guy's really telling the truth. So, and indeed I find it to be very helpful when the trial court who's seen or heard the witnesses makes this kind of finding. So as you make your argument, you should understand that he wasn't believable in this regard. Is it given for us, though? So, taking that as a given, how does that affect your overall argument? Take it as a given that Gene Demosthenes was not very believable when he testified about his situation at Bard. The documents prepared by Bard, certified by Bard, presented by Mr. Demosthenes, show exactly what was going on there. And they show that his, and I would say that actions speak louder than words, his progress at that company had actually substantially improved from 2016 when child support was set and when he was let go. The percentage that he was making of quota went from 34% to 66%, if I'm remembering correctly, and when he was making 88% of quota, they decided to put him on probation. At no time was he doing better than at that time. At a time when he had been given a medical device to sell in a substantially smaller market in exchange for one of the other ones that he had been selling at a larger market. So, objectively, he was doing better. Bard acknowledged that his production was improving. Those are the facts. Despite that, he was let go. Again, the Bard documents will tell you. He was let go, not discharged for not doing the job, not for any voluntary quit, not for any malfeasance, nothing. He was simply let go is what their documents stated. And they had all of those options available to them. If you look at their documents, they call it a discharge. No, they had choices, gross misconduct, unsatisfactory performance, voluntary quit. They had 36 choices and they chose simply a discharge. So the fact that his performance was at 88% and off time high belies any credibility issue that the court had with Mr. Demosthenes' testimony. Now, I think a large part of the credibility issue was not so much with what went on with Bard, but also with what the court viewed as an inadequate search for employment. And in that particular case, again, it is uncontradicted that Gene did his job search. He filed him with the court. He hired a head hunter. He interviewed in metropolitan areas, contrary to what the court said was, well, we're concerned he didn't seek to relocate and apply in larger areas. He applied in larger areas. He did not get any offers. Why relocate if you don't have a job and put yourself in further financial peril and in an even worse position when it comes to keeping current with your obligations? And he did the job search daily. He filed his affidavits. He was eligible to apply with. He applied for jobs that really weren't in his area, just in hopes of having any income coming in. He had, I believe, five job interviews. From those interviews, he had one firm offer. That was from Lowe's. He took that job. It was substantially less, but it gave him some money, and the money was larger than what he was getting in the unemployment benefits, which were going to be running out. And that is also a little significant with respect to his job loss. He got granted unemployment benefits. They didn't view him as having done anything affirmatively to result in him being fired. But again, he did everything he could to find a job. He took the first job available. The court speculates they think he could have found a better job in a larger metropolitan area, but there's no evidence on that. They think he should have applied for more jobs, but there's no evidence that there was any other job available for which he didn't apply. Counselor, can we go back to the probationary period where there was discussions and there's testimonies with regard to your client having been stressed out due to the divorce proceedings and missing work and things of that nature? Yeah. You're talking about the high-water mark of his earning career, yet there's all this testimony that he was struggling. He testified that he was struggling, yes. It stressed him out. There were court hearings he had to do. And so I think he was concerned that maybe his effort wasn't as great as it could have been, but the results are that his effort was significantly improved. And despite the stress, he was doing great. And I think a lot of us can look and see when we're really stressed out, feeling like, oh my gosh, I should have put more time in on this brief. I should have been better prepared for trial. All of those things, but you get up, you go, you do your job, and maybe you did great. But your particular feelings at the time can be very disparate depending on everything else going on. I gleaned from what I read on that topic was that the failure to, or the missing of work had affected his sales, and that was part of what the probationary procedure was attempting to install, but that he was missing work, and thus his sales were going down during the period of his high-water mark. Well, I think he was concerned about that, and he testified to that, yes. That was not in terms of the documents by Bard, that that was a particular concern of theirs, and that was not something that was identified in his separation papers. Okay, you made that point, so okay, I've got that. One other thing I just want to touch upon before we move on is that you indicated there was these five inquiries, some of the job search occurred out of state. Yes. And there was a concern the trial court addressed in finding that the respondent couldn't recall the names of those five companies? Yes. Is that right? I believe the trial court did identify that, yes. And he, I think, had testified in general about the five places that he had received interviews with, yes. Was Lowe's one of those five? Lowe's, you know, I honestly don't know if Lowe's was one of those five, or if it was number six, and that led to an actual offer or not. I wasn't And the affidavits submitted, did it reference any of the five? The affidavits of the job searches? Yes. I don't know if they were, I wasn't trial counsel, so looking at the affidavits and having Gene's testimony that he doesn't know which of the five are, I'm unable to answer that. This case is procedurally a little strange. Let me refer to the parties as Gene and Jennifer, that'll be easier. Okay. Petitioner and respondent never worked through it. If I understand correctly, and as I'm asking about this, please correct me if I'm mistaking you, Jennifer, was the petitioner petitioned to modify child support to increase it? Yes. And set forth various grounds or reasons why that should be done. Mm-hmm. And Gene had a petition to reduce child support and set forth various reasons why. Mm-hmm. And the trial court conducted a hearing on these petitions. Mm-hmm. And in addressing the specific petitions, am I correct that the court denied Jennifer's motion of modified child support on grounds that this was the grounds she asserted were not demonstrated? If I'm remembering correctly, there were actually three petitions. One, Jennifer filed to increase. Two, Gene filed to decrease upon the emancipation of one of the children. And then Gene filed to decrease upon his termination there. I think you're correct. Thank you for pointing that out to me. So there were these three. Right. But leaving aside the emancipation of the oldest child for the moment, it seems to me, and again, correct me if I'm wrong in this, that the trial court addressed the respective petitions to increase and decrease child support. Yes. And said that the reasons cited therein neither party prevailed. Is that right? That is correct. Except for the one to decrease from three to two. Leaving that aside. Yes, he did. So the grounds that Jennifer cited, the trial court didn't find in her favor. These weren't demonstrated. And the grounds that you cited on behalf of Gene, the court found that those weren't demonstrated either. Right. With respect to Jennifer, I think her allegations were that she thought his ability to pay had increased, his income had increased, and that the children's expense has increased. And those were denied because there wasn't anything substantially different from. Right. Well, without going into the reasons why, the court found, no, I don't agree. And the court found, no, I don't agree with the reasons to reduce it. So the only thing that then left was the question of, by the way, Judge, this old child has now been emancipated and that should change things, which was your petition to reduce on that ground. Yes. And the reason I ask is this is a little peculiar because, and I think this was the sequence of events of what happened, because the trial court makes those findings of the first two, addresses the emancipation issue and winds up not only not reducing on the basis of the emancipation, but increases child support. How did that happen? Well, I think. First of all, is that what happened? Have I got this right? No, I don't. Okay, I think he increased it insofar as by not changing the amount Gene owed and keeping it the same. It essentially says, I'm granting you the increase for, or decrease for the reduction in the 18, but I'm keeping it at 32%, where if he would have been doing it for two kids, presumably there would have been a reduction. So yes, I think that's probably correct if you look at it that way, which would be an error, which is part of. So he acknowledged the emancipation and said there's no need to change the child support obligation? I don't, and obviously I'm not in the judge's mind, but that's not how I think he viewed it. I think that's, and honestly, that's not a way that I viewed it either when I was going through this. I was just looking at, okay, what should child support be, given that he believes it should be changed? Well, as a matter of dollars, when the hearing was all over and the court made its ruling, was he ordered to pay more in child support than he was before this all started? I believe the support stayed the same. He still had to cover all of health insurance, which I addressed in my brief as well. There was no change in the cost of extracurricular activities. To the extent that he is now paying that amount for two children instead of three, yes, it's an increase. It is also problematic, as I point out in my brief, because it doesn't jive with application of the income shares numbers and the finding of income that the court made with respect to Gene. So specifically, this little strange, excuse me, out of the last portion of your argument, so to ask this specifically, what did the court do wrong? The court didn't apply the definition of income. It inappropriately excluded my client's rental issues. It excluded a whole heck of a lot of her income. So that's the starting point. The other thing it didn't do is it didn't apply the statute which says health insurance is now part of basic child support and the court shall make a determination, and it's supposed to be proratic. The court didn't do that. The court didn't exercise its discretion at all, one way or another, in evaluating what should be done with extracurricular expenses under the income shares and under the parties' respective income positions. The other error that the court did was it imputed this income to Gene when he had done everything he could to do a good job at his employer, his production had gone way up, and he did everything he could with respect to searching for a job. And I see my time is up. Okay, you'll have an opportunity to address this again in your rebuttal argument if you wish. Ms. Skinner? Good morning. May it please the court and counsel. Counsel. The trial court's order was within its discretion and should be upheld. There are numerous facets of Gene's brief, so I'm going to focus on child support, health insurance, other child-related expenses, and then the contempt findings regarding the vehicles. Let me ask you the same question I just asked Ms. Weber, and that is when you filed a petition to increase child support, she filed a petition to decrease child support. Is my understanding correct that the trial court addressed those petitions and essentially found neither of them well taken? So leaving aside the emancipation question. And you're nodding your head, you're in agreement. Yeah, you have to state, especially since we have a third party. Sorry, sorry, sorry. So is that a correct statement? I believe, to be entirely honest, I don't know off the top of my head. Yes, I don't know off the top of my head what the prior child support number was. Well, they were denied. So then it was left with the petition on emancipation. Yes. And the petition on emancipation would seem that because one of the children is now emancipated, the child support, the argument is should be reduced or perhaps kept the same, or at least that would be an argument to be made. When the court addressed that petition, did it reduce or increase the child support? What was its ultimate action on the emancipation petition? Like I said, I don't know off the top of my head what the prior child support amount was. I believe it stayed the same, but I don't believe it was reduced, certainly. So in effect, if it stayed the same and the trial court denied the other petitions, then at the conclusion of all these hearings, the child support obligation should have been the same as it was for Gene going in. I think so. Yes, I think so. Yes. Is my understanding correct that it was? Yes, I believe so. Yes. I believe your understanding is correct. Did it increase? I don't believe it increased. Pardon? I don't believe it increased. Okay, well, go ahead. Well, let me add, I think the question is did the respondent pay more? But I'll move on and ask you this. On what authority or on what pleading justifies the imputing of income to the respondent? You just acknowledged that both petitions to modify were denied. Well, they weren't denied entirely. There was a change in circumstances in the trial to age out, and seeing as there was a change in circumstance related to that, the court had to set child support as of the time of trial, and there had to be an amount determined. I mean, I suppose the court could have just said nothing is going to change, and so the amount is the same, but I think because the child aged out, that was a change in circumstances that allowed the court to set child support as of the time of its order. You said trial. This is post-final judgment. Right, as of the time of the post-degree proceedings, yes, the modification and the contempt proceedings. I believe the trial court properly found that Gene had attempted to evade a support obligation and therefore was within his discretion to impute income to Gene. Discretion pursuant to what plea? Well, the modifications were not denied in whole. There was a change in circumstance when the child had aged out, which I believe was in Gene's plea. Obviously, he wanted child support to be modified downward, but I don't think the court is bound to modify child support downward based upon that request. I think the trial court can say, you asked to modify child support. It's going to be, this is what child support is going to be based upon the circumstances at this period in time. So basically, once these issues are brought before the court, the different pleas, once there's a change of circumstances, the court can recalculate child support to whomever's favor the court finds is fit. And that's the rationale of the argument. Yes. I just want to make sure I'm not wrong. Yes. Okay, thank you. Yes, yes. As it relates to the health insurance, Gene failed to request a modification of the health insurance premium allocation, and so the court properly failed to change this allocation. Gene made the prior order regarding the payment of the Dodge Journey debt in impossibility, and so he should be responsible for paying half its value to Jennifer. The trial court's order was appropriate and should be upheld in full. First, Gene argues that it was erroneous for the trial court to impute income to him. Courts can properly impute income when the court determines that a change in employment is motivated by desire to evade a support obligation. Here, Gene testified that he no longer was motivated at work, and specifically that the court proceedings, including hearings involving an order of protection, were interfering with his motivation at work. Evasion of a support obligation is essentially a credibility determination, and the trial court's order referred to Gene's lack of credibility. Specifically, in part, the trial court found that Gene lacked credibility regarding his job search because he could not recall the name of any of the companies he interviewed with. This credibility determination should not be disregarded. Let me ask the same question I asked Ms. Rubin, that is, assuming we accept the trial court's credibility filing, which is pretty much given, as I said, then what? What does that mean? And how does that affect the overall view of all of the subjects? If we're accepting as a given that Gene was not credible, that means the court could properly find that he had a part in his termination from BARD, which was motivated in part, the court could properly find, in an effort to evade his support obligation, and that is one of the, if the court finds that child support payors attempting to evade a support obligation, then the court can properly impute income based upon that finding. Well, I want to make sure my understanding of the figures is correct here. The child support obligation that was originally imposed in September of 2015, I think, was $1,355 a month. Did that sound right? $1,355, you said? Yes. And it was that figure, which the parties sought to modify, you filed a motion to modify child support to increase it. Gene filed a motion to reduce it from that figure. And your petition, hers, and then also calling for the court's attention to emancipation. When all the smoke cleared, what was the child support obligation that Gene continued? What is the child support obligation he now faces? What's that child support obligation that is now being appealed to this court? I believe $1,352 a month. So the figure is the same amount? Essentially. My recollection is the number is like $1,580. Did it go up? I don't believe it. I believe it's in the $1,300. I don't believe it went up. Given that this is a figure we're supposed to be reviewing, that's a pretty important thing to make certain for us when we review it. Correct. I see it is $1,580 a month. $1,580? You are correct. Well, then it went up. How did it go up if all the petitions were denied and the only issue remaining for the court was the emancipation of the older child? I suppose it's possible that the parties previously agreed upon a lower amount. I can't hear you. I suppose it's possible the parties previously agreed upon a support amount that was lower than it should have been. And now that the issue is before the court, the court is set for a child support. Let me ask you to say that again. Do you suppose the parties could have agreed to this? I suppose they could have previously. The previous child support amount could have been an amount that did not represent what the statutory amount would have been at the time. But now that the issue is before the court to decide child support, the court set child support with the imputed income in the appropriate statutory amount. Well, again, as I say, this is procedurally difficult. If your petition to increase it has been denied, and yours to reduce it has been denied, and then we'll just deal with the emancipation. It seems to me when a trial court addresses the emancipation of a minor who has been one of the reasons for child support, that one of the few things can happen. Either normal course, I suppose, the child support amount in total would go down since one of the children is no longer receiving it, or the court at its discretion could say, for whatever reason, I'm going to keep it the same. But how is it that child support per month would go from $13.55 to $15.80 a month when the only issue before the trial court is that one of the kids is not emancipated? How would that happen? At the time of the post-decree proceedings, the court had to look at what Gene's income or imputed income was at that time. It could have been previously the court didn't consider other sources of income, and now, obviously, Mr. Nostany's income is considered, so it is the income share's model at this point. So it is a different way to calculate child support. I don't understand what you're saying. We have a child no longer receiving child support. Explain again how, in addressing what the child support should be, the child support bottom line amount went up. Well, previously, only Mr. Nostany's income would have been considered, and I don't know what income was considered when child support was set previously. The income that the court based the $15.80 on was his base salary, his commission's rental income, and then, obviously, Mr. Nostany's income is now factored in under the income share's model, which was not previously. Procedurally, is my understanding correct that the court first addressed the petition to increase and then the petition to reduce before addressing the emancipation issue? Yes, I believe so. So the court found that neither of those petitions carried the day, and then addressed the emancipation? I believe so, yes. I still don't understand how Gene wound up having an increase in child support of $230 a month on just the emancipation issue alone. How'd that happen? Unless the court said, by the way, I'm going to go back and I'm going to reconsider Jennifer's petition, I think, now that I've thought about it further, maybe she has a good point, and I'm going to increase child support. The court never said that, did it? It did not. So you previously argued that the court did not deny the motion to modify and hold this whole other issue of civil contempt. Yes. That's a separate issue. It seems to me, just on my reading of the record, the court did deny the motion and hold and then took up the motion on termination and found change in circumstances and is finding accordance to that pleading. The child support modification pursuant to that pleading? I believe the only changes or advances the court found regarding child support was the emancipation of the child. I would say that. Your argument is, and we're very sensitive to it, stationary calls by trial courts are entitled to deference. That's certainly true. The trial court made its call here and it's entitled to deference, but in order to be deferential to these rulings, we have to be able to understand what happened and how it happened. Understood. And I don't know what happened here. Procedurally is the issue, and you had mentioned previously a trial. We're bound by the pleadings. This is post-trial, this is post-judgment. Yes. So we're bound by the pleadings. Early on I asked, on what pleading did the court justify an imputation of income? And that's sort of where I started, and I'm wondering if your argument is because all these pleadings were pending, the court now had discretion to look back and recalculate child support based upon the circumstances ahead for the court at that time. That seems to be what you're arguing. Yes, sir. Yes, Your Honor. Regarding Jennifer's income, Jennifer's farm rental income was included in the income calculations that the trial court adopted. Regarding Jennifer's investment income, this court previously held that withdrawals from an IRA are not considered income for purposes of child support in the 2008 case in Raymarriage v. O'Daniel. Jennifer's investment income withdrawal is analogous to an IRA withdrawal and therefore also should not be considered income. Regarding Gene's income, it is true that the trial court's order states that it was basing child support on Gene's salary from BAR. However, presumably what the court meant was Gene's income from his employment, meaning his base salary plus his 2016 commissions, as that is what Jennifer's child support calculation included. Regarding the vehicle contempt, Gene argues that because Jennifer was awarded the Dodge Journey vehicle and its debts, that he could not be held responsible for half its equity once it was repossessed. However, Jennifer testified to her unsuccessful efforts to get Gene to cooperate with transferring the loan to her name so she could make the payments. The finance company would not speak to her as she was not the loan holder and communication through counsel was ignored. Her only option was to rely on Gene to make the car payments. When he failed to do so, the car was repossessed. Jennifer fulfilled her portion of the order related to the journey, but Gene's actions resulted in the impossibility of fulfilling the order and the car's repossession. It was therefore appropriate that Gene be required to pay Jennifer half the car's equity as a sanction for his actions. Also related to the vehicles, Gene argues that he could not be responsible for half the purchase price of the Ford Fusion, the replacement vehicle, because he did not agree to its purchase. Gene ignored Jennifer's repeated attempts to discuss the purchase of a vehicle for the party's children. By entering into an agreement that he would discuss and agree upon a vehicle with Jennifer, Gene implicitly agreed that he would engage in the process. Gene made the agreement process an impossibility by refusing to respond to or acknowledge Jennifer's communications regarding the car purchase. Because Gene failed to follow through with his implicit agreement to engage in the process in good faith, he made an agreement regarding the car purchase an impossibility. Therefore, it was appropriate to hold him responsible for half the replacement vehicle's purchase price. The other portions of the trial court's order were within his discretion based on the facts of this case. The trial court is in the best position to observe the party's demeanor and to judge their credibility. The trial court found that Gene was not credible regarding the circumstances behind the loss of his job and his engagement in a good faith job search. As such, the court imputed income to Gene. For these reasons, in addition to those stated in Jennifer's brief, the court's order should be upheld in full and the decision below affirmed. Thank you. Thank you, counsel. Mr. Weber, enter your boat. I should have asked the question differently when you were asked last up here. Is it correct that as a result of these proceedings, their clients have been ordered to pay $1,580 a month in general support as opposed to $1,355, which he had been ordered when it all started? Yes, Your Honor, that is correct, despite the fact that the court's order does say on page 9 that while denying all other basis for modification of respondents' court application, child support is modified downward to reflect the change in the children. That is yet another inconsistency between what this trial court says and does without a lot of elucidation as to why it does it. Why is that inconsistent? The ruling is on the pleading. The pleading is termination as to that child who's reached emancipation. Correct. And so what's inconsistent about decreasing child support with regard to advancing that motion? The inconsistency that I guess I see is the trial court is saying that it's modifying child support downward, but in actuality the amount is going up. And there are a couple of other areas where the court has some of those inconsistencies with what it says and what it does. For instance, the court says it's going to only use the 714 for his income, but in the exhibit it relies upon, there's income of about $112,000 when you multiply out that monthly figure. And I think, as I cited in a portion of my brief, that when there is this inconsistency between what the court finds or says it does and then what it does, that without explanation that in and of itself shows a finding to be against the manifest weight of the evidence or an abuse of discretion. And I guess if there are no more questions on that particular component, I would like to address the vehicle issue very quickly. I think one of the things that I didn't mention in my brief but the court needs to be cognizant of when reviewing this finding on contempt and the order entered particularly with respect to the journey, is that the purpose of contempt is to compel compliance. It is not to punish someone. And ordering Gene to pay half the equity to Jennifer on that journey is punitive and purely punitive. Not only is it punitive, but as I explained in my brief, the finding of contempt on that is against the manifest weight of the evidence. The only person ordered to do anything on that journey was Jennifer. That's it. End of story. December 2016 order. And so I think the court needs to be cognizant of that when looking at another issue. There was no impossibility here. Absolutely none. As the court commented on the first piece of its order, this is a high-conflict divorce. These folks have been in court many, many a time. If Jennifer Demosthenes thought that she was unable to make that payment because she didn't have information from Gene, she could have sought help from the court rather than resorting to self-help. She could have defiled the motion to compel information. She could have subpoenaed that information. She did none of those things. And I believe it's the Milliken case that I cite where a gal takes on this obligation of satisfying a debt to her brother that was assigned to her husband, and then seek an implication. You don't get to do that. You're in court. The court has jurisdiction over these matters. That's how you get relief if, in fact, relief is required. However, I think in this case, because of the timing of everything, with respect to that journey, the court doesn't have any jurisdiction to adjust that order at all. With respect to the due process arguments, I think my arguments are set forth fairly clearly on that. The court makes these self-effectuating orders reliant on information to be provided by Jennifer's counsel in the future without providing Gene any responsibility to respond to these allegations. That's clearly violative of his due process, very much like the Jorgensen case. The other issue is with respect to this authorizing or binding of contempt in the case Gene fails to keep current on his child support obligations. That violates due process, and it denies Gene any opportunity to respond. Should he miss a current child support obligation, he has an opportunity to provide a defense for that, to show that it was not contemptuous. Thank you. Okay, thank you, counsel. The court will take this matter into advisement and be in recess for a few more weeks.